UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JERRY KEENE,

    Plaintiff,

v.                                        Case No.  3:16cv94/LC/CJK

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,

    Defendant.

_____/

ORDER and
REPORT AND RECOMMENDATION

    Plaintiff, a prisoner proceeding *pro se* and *in forma pauperis*, has filed an amended civil rights complaint under 42 U.S.C. § 1983 (doc. 5), followed by a motion to compel (doc. 6), a motion to appoint counsel (doc. 8) and a motion for leave to file a second amended complaint (doc. 16).  For the reasons that follow, the undersigned concludes that this case should be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii), for plaintiff's failure to state a claim on which relief may be granted.  Plaintiff's motion to amend will be denied, as plaintiff's proposed amendment is futile.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is an inmate of the Florida penal system currently confined at Santa Rosa Correctional Institution. (Doc. 5). Plaintiff's amended complaint names one defendant, the United States Department of Homeland Security ("DHS"). Plaintiff alleges that he has submitted several requests to DHS and the Department of State to renounce his United States citizenship under 8 U.S.C. § 1481, but DHS has not responded to his requests. Plaintiff claims this violates his "constitutional right to relinquish/renounce his United States citizenship", and his right to due process of law. As relief, plaintiff seeks an order compelling DHS to issue a final agency decision on his request. Plaintiff's "Motion To Compel" seeks essentially the same relief -- the issuance of a writ of mandamus compelling an officer of DHS to issue a final agency decision on plaintiff's request to renounce his citizenship. (Doc. 6).

## DISCUSSION

Title 28 U.S.C. § 1915 mandates that the district court dismiss an *in forma pauperis* action if the court determines that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Dismissals for failure to state a claim are governed by the same

standard as Federal Rule of Civil Procedure 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). In applying this standard, the court accepts all well-pleaded factual allegations in the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *Hunnings v. Texaco*, Inc., 29 F.3d 1480, 1483 (11th Cir. 1994). *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (holding that courts must follow the Supreme Court's "'two-pronged approach' of first separating out the complaint's conclusory legal allegations and then determining whether the remaining well-pleaded factual allegations, accepted as true, 'plausibly give rise to an entitlement to relief.'" (*quoting Iqbal*, 556 U.S. at 679)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The mere possibility that the defendant acted unlawfully is insufficient to survive dismissal for failure to state a claim. *Id*. The complaint must include "[f]actual allegations . . .

[sufficient] to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, that is, "across the line from conceivable to plausible." *Id.*, 550 U.S. at 570.

Plaintiff's allegations fail to state a facially plausible procedural due process claim, because plaintiff fails to demonstrate he has been deprived of a constitutionally protected liberty or property interest. Plaintiff has no liberty or property interest in receiving a response to his request. Furthermore, "courts have repeatedly -- and uniformly -- held that an incarcerated U.S. citizen has no constitutional right to renounce his U.S. citizenship during the course of his incarceration." *See, e.g., Sze v. Johnson*, --- F. Supp. 3d ---, 2016 WL 170930, at *7 (D. D.C. Mar. 24, 2016) (citing cases).

Plaintiff's allegations also fail to state a plausible basis for mandamus relief. "The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr v. United States*, 426 U.S. 394, 402, 96 S. Ct. 2119, 48 L. Ed. 2d 725 (1976) (citations omitted). "Mandamus relief is only appropriate when: (1) the plaintiff has a clear right to the relief requested; (2) the defendant has a clear duty to act; and (3) no other adequate remedy is available." *Cash v. Barnhart*, 327 F.3d 1252, 1258 (11th Cir. 2003) (quotation marks and alteration omitted). "Mandamus is intended to provide a remedy for a plaintiff only if he has exhausted all other

avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Id*. (quotation marks omitted). "[A] writ of mandamus will issue 'only where the duty to be performed is ministerial and the obligation to act peremptory, and clearly defined. The law must not only authorize the demanded action, but require it; the duty must be clear and undisputable.'" *13th Reg'l Corp. v. U.S. Dep't of Interior*, 654 F.2d 758, 760 (D.C. Cir. 1980) (*quoting United States ex rel. McLennan v. Wilbur*, 283 U.S. 414, 420, 51 S. Ct. 502, 75 L. Ed. 1148 (1931)). "[E]ven if the plaintiff overcomes all these hurdles, whether mandamus relief should issue is discretionary," *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005), and typically the court must also "find[ ] 'compelling . . . equitable grounds.'" *In re Medicare Reimbursement Litig.*, 414 F.3d 7, 10 (D.C. Cir. 2005) (*quoting 13th Reg'l Corp.*, 654 F.2d at 760) (alteration in original).

Even assuming, without deciding, that DHS has a ministerial duty to respond to plaintiff's request to renounce his citizenship, *see, e.g., Turner v. Beers*, 5 F. Supp. 3d 115, 119 (D. D.C. 2013) (citing cases from that court holding that the only ministerial duty DHS owes to prisoners seeking to renounce their citizenship is to respond to their requests), plaintiff has no clear right to a response at this time. There is no statute or regulation specifying a time frame for response to a request for

voluntary expatriation. Plaintiff's pleadings (doc. 1) indicate that his requests have been pending only six months. Even assuming *arguendo* that DHS must adjudicate applications in a reasonable time, "[w]hether a passage of time is 'reasonable' is itself a subjective, merits-based determination, not a 'clear right.'" *Orabi v. Chertoff*, 562 F. Supp. 2d 1377, 1383 (N.D. Ga 2007) (internal quotation marks and citation omitted). There is no indication in this case that DHS has refused to review plaintiff's request.

In addition, mandamus relief is not appropriate because plaintiff fails to establish a clear right to the ultimate relief he seeks, that is, the issuance of a formal acknowledgement that he is no longer a United States citizen (a Certificate of Loss of Nationality). Article I, Section 8 of the Constitution establishes that "Congress shall have power . . . To establish a uniform Rule of Naturalization." This constitutional mandate empowers Congress to define "the processes through which citizenship is acquired or lost," to determine "the criteria by which citizenship is judged," and to fix "the consequences citizenship or noncitizenship entail." *Davis v. District Director, INS*, 481 F. Supp. 1178, 1183-84 n. 8 (D. D.C. 1979) (citation omitted). Congress has promulgated seven procedures for voluntary renunciation of citizenship. *See* 8 U.S.C. § 1481(a)(1)-(7). The first five procedures require the

person seeking renunciation to be in a foreign country. *See id.* § 1483(a) ("Except as provided in paragraphs (6) and (7) of section 1481(a) . . . , no national of the United States can lose United States nationality under this chapter while within the United States. . . . ."). The remaining two procedures allow citizens to renounce their citizenship while in the United States. *See id.* § 1481(a)(6)-(7). The first procedure, codified in Subsection (a)(6), provides for voluntary expatriation by:

> (6) making in the United States a formal written renunciation of nationality in such form as may be prescribed by, and before such officer as may be designated by, the Attorney General, whenever the United States shall be in a state of war and the Attorney General shall approve such renunciation as not contrary to the interests of national defense.

8 U.S.C. § 1481(a)(6). Although the statute refers to the Attorney General, this authority has since been transferred to the Secretary of Homeland Security. *Turner*, 5 F. Supp. 3d at 119 (*citing* 6 U.S.C. § 557). The second procedure, codified in subsection (a)(7), requires "committing any act of treason against, or attempting by force to overthrow, or bearing arms against, the United States."

As plaintiff is not in a foreign county, he is apparently attempting to renounce his citizenship pursuant to subsection (a)(6). Plaintiff cannot avail himself of that provision, however, because the United States is not "in a state of war" and, even if it were, plaintiff is prevented by his incarceration from meeting the additional

statutory requirement that he make a personal appearance before an Attorney General designee. Other prisoners facing this obstacle have found no relief in the federal courts, as courts have consistently held that a prisoner has no right to extraordinary expatriation procedures. *See, e.g., Koos v. Holm*, 204 F. Supp. 2d 1099, 1108 (W.D. Tenn. 2002) (holding that federal prisoner lost his right to renounce his citizenship while he remained a prisoner; "After Koos fully serves his sentence, he is free to travel to another country and renounce his citizenship to a United States Consular Officer. As he is a prisoner at this time, he may not exercise this right."); *see also Taylor v. United States Dep't of State*, 2010 WL 4225535, at *3 (E.D. Cal. Oct. 20, 2010) ("[T]here is no way for Plaintiff to formally renounce his citizenship while he is incarcerated in the United States and he does not have a right to travel to another country while he is incarcerated in order to renounce his citizenship.").

Until plaintiff has served his sentence, he will not be free to perform the acts needed to renounce his citizenship. *See Koos, supra*; *Sze v. Johnson, supra* (dismissing, for failure to state a claim, state prisoner's complaint against Secretary of DHS arising from DHS' refusal to grant prisoner's request to renounce citizenship; holding that court was without jurisdiction to grant relief under

Mandamus Act, 28 U.S.C. § 1361, because granting prisoner's request and issuing Certificate of Loss of Citizenship was discretionary act beyond the jurisdiction of the Mandamus Act, and prisoner had received the only relief to which he was entitled (a response to his request); prisoner failed to state plausible claim for relief under Administrative Procedure Act for review of final agency decision, because DHS' response that it could not proceed with prisoner's renunciation request because his incarceration prevented him from meeting statutory requirement of appearing in person for interview at designated United States Citizenship and Immigration Services office was not arbitrary or capricious; prisoner failed to state plausible claim under Due Process Clause because prisoners do not have constitutionally protected liberty or property interest in renouncing their citizenship); *Turner v. Beers*, 5 F. Supp. 3d 115, 119 (D. D.C. 2013) (same); *Sluss v. U.S. Citizenship & Immigration Servs.*, 899 F. Supp. 2d 37, 41 (D. D.C. 2012) (same); *Weber v. U.S. Dep't of State*, 885 F. Supp. 2d 46, 53 (D. D.C. 2012) (same).

For these reasons, the allegations of plaintiff's amended complaint fail to state a claim to relief that is plausible on its face, and dismissal is warranted. Plaintiff's proposed amendment (doc. 16), seeking to add the Secretary of the Department of Homeland Security as a party to this action, is futile as it would not alter the court's

conclusion that plaintiff is not entitled to relief. *See Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008) (court may deny leave to amend where there is substantial ground for doing so, such as futility of amendment).

Accordingly, it is ORDERED:

Plaintiff's motion to amend (doc. 16) is DENIED.

And it is respectfully RECOMMENDED:

1.  That this case be DISMISSED under 28 U.S.C. § 1915(e)(2)(B)(ii), for plaintiff's failure to state a claim on which relief may be granted.

2.  That the clerk be directed to close the file.

At Pensacola, Florida this 22nd day of April, 2016.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.